|  |  |
|---|---|
| Bakari Darnell Mackey, | |
| Petitioner, | CV 12-163-TUC-CKJ (JR) |
| vs. | |
| Conrad Graber, | REPORT AND RECOMMENDATION |
| Respondent. | |

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

Pending before the Court is Federal Prisoner Bakari Darnell Mackey's Petition for Writ of Habeas Corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2241. In accordance with the Rules of Practice of the United States District Court for the District of Arizona and 28 U.S.C. § 636(b)(1), this matter was referred to the Magistrate Judge for report and recommendation. As explained below, the

1

Magistrate Judge recommends that the District Court, after an independent review of the record, deny the Petition.

## I.     BACKGROUND

Petitioner is currently incarcerated at the Federal Correctional Institution in Safford, Arizona ("FCI-Safford"), and at the time of the incident underlying this case he was incarcerated at the Federal Correctional Center ("FCC") in Yazoo City, Mississippi.  On April 19, 2011, Special Investigative Agent ("SIA") Nicholson at FCC-Yazoo City received a memorandum from a teacher in the prison's education department, Engret Jenkins, stating that on April 18, 2011, Petitioner entered her office and told Jenkins that another inmate, Jerome Harris, wanted Jenkins' address so that Harris could send Jenkins $3,000.00 to bring cigarettes into the prison. *Response*, Ex. 1, Att. 3, p. 3; Att. 2.  On July 7, 2011, Acting SIA Debra Dawson prepared an Incident Report charging Petitioner with offering a staff member a bribe in violation of Prohibited Act Code 216A.  The Incident Report describes the facts underlying the charge as follows:

> An SIS investigation was completed regarding prohibited acts committed by you during your assignment in the general population at FCC Yazoo City.  Specifically, on April 18, 2011, you Mackey, Barracki, Reg. No. 21282-001, entered a staff member's office and stated to her that another inmate asked you to ask her for her address.  You stated to the staff member that the inmate wanted to send her $3,000.00, in an effort to attempt to eventually ask her to bring in cigarettes.  Although you allege that you were delivering a message for another inmate, the inmate denied making this request to you and you have not provided any evidence that you were only speaking on another's behalf.  You are also the only inmate identified by the staff member as attempting to get her to introduce contraband into the

>institution. Therefore you are being charged with violation of code 216- Offering a staff member a bribe.

*Response*, Ex. 1, Att. 3, p. 4.

The Disciplinary Hearing Officer ("DHO") Report reflects that Petitioner was given notice that a hearing on the charges would be held on July 7, 2011, and that he was personally advised of his rights before the DHO on July 8, 2011. *Id*. Ex. 1, Att. 3, p. 1. Petitioner was informed that he had the right to staff representation and to present witnesses and documentary evidence at the hearing. *Id.*, Ex. 1, Att. 3, p. 8. Petitioner requested representation by Dr. Cheek, a psychologist, and indicated that he wished to call Jenkins as a witness. *Id*. In an Inmate Request To Staff Member form dated July 10, 2011, Petitioner also asked Dr. Cheek to obtain Jenkins' April 19, 2011 memorandum and "Mr. Henderson's SIA report following the April 26, 2011, interview with myself, inmate Jerome Harris, and telephone conference with Mrs. Jenkins." *Petition*, Ex. A

On July 21, 2011, Acting DHO Truex held a hearing on the charges. *Id*., Ex. 1, Att. 3, pp. 1-3. At the hearing, Petitioner denied offering Jenkins a bribe, denied making the statements she reported, and stated that any action he took was at the direction of staff. *Response*, Ex. 1, Att. 3, p. 2. In addition to Petitioner's testimony, the DHO received and considered the SIS investigation report of Jenkins' statements and a second memorandum from Jenkins, dated June 29, 2011 and sent to Acting SIA Dawson, which again detailed the allegations. *Id*., Ex. 2, Att. 3, pp. 2, 17. However, Jenkins did not appear at the hearing and, after her statement was read, Petitioner

asserted that Jenkins would testify that "he did not offer her a bribe, he did not ask her for her address and he never mentioned a dollar amount to her." *Id*., Ex. 1, Att. 3, p. 1.  Petitioner also submitted an affidavit explaining his version of events and stating that on April 26, 2011, he met with SIA Nicholson and during the meeting Nicholson had a telephone conversation with Jenkins after which Nicholson told Petitioner that he would be released "back into the general population" after safety concerns were addressed.  *Id*., Ex. 1, Att. 3, p. 14.

On July 29, 2011, the DHO issued his decision finding Petitioner had committed the offense.  *Id*., p. 2.  The DHO based his findings on the investigative report and specifically relied on Jenkins' statements and the statement from Jerome Harris, the other inmate, denying making any request of Petitioner to deliver a message to Jenkins.  *Id*.  The DHO concluded that Petitioner was "attempting to compromise the staff member," and was "attempting to discover if she would be willing to accept money from another inmate, and if she was willing, then you would move forward with your plan to attempt to introduce contraband in exchange for paying the staff member money."  *Id*.  The DHO believed the Petitioner was using this approach in an attempt to "isolate himself from responsibility," and found it suspicious that, if Petitioner had intended to report the other inmate for suggesting such a plan, that he did so to Jenkins, a teacher, and not to an investigator or other appropriate personnel.  *Id*.  The DHO's sanction was 27 days of disallowed good conduct time, 30 days of disciplinary segregation, 180 days of commissary

1 restriction, 180 days of telephone restriction, and a recommendation that Petitioner be transferred. *Id*.

On August 14, 2011, Petitioner filed a Regional Remedy Appeal alleging that the DHO failed to comply with the regulations on inmate discipline because Petitioner was "unable to appreciate the nature and quality, or wrongfulness of his actions," and was therefore "not responsible for his actions." *Petition*, Ex. 1, p. 1. He also alleged that the DHO's decision was not based on facts and that he was not timely issued the incident report. Finally, he alleged that his staff representative failed to adequately represent him and failed to obtain documents related to the investigation and did not question his requested witness at the hearing. *Id*., pp. 1-2. Petitioner describes the document in question as an April 26, 2011 memorialization of statements that Jenkins made to SIA Henderson indicating that Jenkins did not believe that Petitioner had offered a bribe. *Id*., p. 2.

The Regional Director responded on September 22, 2011, denying Petitioner's appeal. *Id*., p. 3. The denial noted that the DHO's decision was based on the "greater weight of the evidence." The Regional Director concluded that Petitioner's staff representative, a psychologist, would have raised Petitioner's mental health if it had been an issue. The Director then noted that the investigation was completed on July 6, 2011, at 1:00 p.m., and that Petitioner received a copy the next morning, which was within the 24 hour period required. *Id*. It was then noted that the documents Petitioner requested, presumably the SIA Henderson's April 26, 2011, report, was not used against Petitioner and was available under the Freedom of

1  Information Act if he wished to obtain them.  Finally, the Director noted that
2  Petitioner's requested witness, Jenkins, had provided a written statement.  *Id.*

3  On October 4, 2011, Petitioner appealed to the Central Office.  Petitioner
4  repeated his allegations that his rights were violated because Jenkins did not appear
5  to testify and the DHO did not ask her questions that Petitioner had submitted.  He
6  also alleged that he was denied his right to present documentary evidence, which he
7  again described as the April 26, 2011, investigative report following the SIA's
8  interview of educational staff at the prison.  *Response*, Ex. 3.  After finding that the
9  greater weight of the evidence supported the DHO's decision, the Administrator of
10 National Inmate Appeals denied the appeal.  *Id*.

11 In Ground One of the Petition, Petitioner claims that his due process rights
12 were violated in his disciplinary proceeding because his staff representative, Dr.
13 Cheek, did not obtain and present SIA Henderson's April 26, 2011, report of an
14 interview of Jenkins that led Nicholson to indicate to Petitioner that no bureau
15 regulations had been violated.  In Ground Two, Petitioner claims that his due process
16 right to call witnesses was violated when Jenkins did not appear at the DHO hearing
17 and the DHO did not ask her the questions Petitioner proposed.  He alleges that these
18 violations resulted in the loss of 27 days of good time credits.  He seeks to have the
19 findings of the DHO expunged from his disciplinary record and his good time credits
20 restored.

21 In his response, without addressing the April 26 documents, Respondent
22 argued that due process was satisfied because Petitioner was provided a copy of the

6

1 incident report, had Jenkins' statement read to him, and was given the decision
2 describing what evidence had been used to support a finding of guilt. *Response*, p. 7.
3 However, the Court determined that if the documents memorializing the events of
4 April 26 exist and support Petitioner's allegations, they are potentially exculpatory.
5 Thus, without reviewing the documents in question, it would be impossible to fully
6 evaluate whether Petitioner was afforded due process. This is because, in certain
7 circumstances, a prison disciplinary officer "may not refuse to consider exculpatory
8 evidence simply because other evidence in the record suggests guilt." *Piggie v.*
9 *McBride*, 277 F.3d 922, 925 (7th Cir. 2002) (regarding surveillance videotape)
10 (internal quotation omitted). "[P]risoners are entitled to have exculpatory evidence
11 disclosed unless its disclosure would unduly threaten institutional concerns." *Id*.
12 Because the Respondent did not produce the documents or deny their existence, it
13 remained possible that the documents in question, as Petitioner's contends, were
14 exculpatory. As such, the Court ordered supplemental briefing regarding the
15 existence and impact of the April 26 documents. Respondent filed his supplemental
16 brief on November 5, 2013 (Doc. 20), and Petitioner responded on November 15,
17 2013 (Doc. 25).

18    As discussed below, the Court finds that the Court has jurisdiction over
19 Petitioner's claims, that Petitioner has exhausted his administrative remedies, and
20 that the process afforded to Petitioner during his disciplinary proceedings satisfied
21 the reduced requirements of the Due Process Clause as outlined in *Wolff*.

22    . . . .

## II. LEGAL DISCUSSION

### A. Jurisdiction

Habeas corpus relief is available to those who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). Petitioner claims that he suffered violations of his rights guaranteed by the U.S. Constitution based on the loss of good time credit as a result of the outcome of disciplinary proceedings at a federal facility. If a constitutional violation has resulted in the loss of good time credits, it affects the duration of a sentence and may be challenged in a section 2241 petition. *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991). Thus, this Court has subject matter jurisdiction. At the time this action was filed, Petitioner was housed in FCI-Safford in Arizona. Thus, venue is appropriate in this Court. *Francis .v Rison*, 894 F.2d 353 (9th Cir. 1990).

### B. Exhaustion

Federal prisoners must exhaust their administrative remedies before bringing a habeas petition pursuant to § 2241. *E.g., Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986). If a petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990). The record here indicates, and the Respondent


agrees, that Petitioner has exhausted his administrative remedies by appealing his claims to the Administrator of National Inmate Appeals.

### C. Analysis

#### 1. Petitioner had no right to representation.

As part of Ground One, Petitioner contends his due process rights were violated because his inmate representative did not obtain all of the documents he requested and did not ask certain unspecified questions of Jenkins. There is no right to retained or appointed counsel in a prison disciplinary hearing. *Baxter v. Palmigiano,* 425 U.S. 308, 314-15 (1976); *Bostic v. Carlson,* 884 F.2d 1267, 1274 (9th Cir. 1989). "Therefore, an inmate has no claim for ineffective assistance of counsel at a disciplinary hearing." *Bostic*, 884 F.2d at 1274. In *Wolff*, the court suggested an exception to this rule exists where an illiterate inmate is involved or the issues are complex. 418 U.S. at 570. However, as evidenced by his pleadings, affidavit, and appeals documents, Petitioner was not entitled to counsel because he is fully literate and the issues involved are not complex.

#### 2. Petitioner's procedural due process rights were not violated.

Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. § 3624. "It is well-settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (quoting *Taylor v. Wallace*, 931 F.2d 698, 700 (10th Cir. 1991)). However, "[d]ue process in a prison disciplinary hearing is satisfied if the inmate

1  receives written notice of the charges, and a statement of the evidence relied on by
2  the prison officials and the reasons for the disciplinary action." *Zimmerlee v. Keeny*,
3  831 F.2d 183, 186 (9th Cir. 1987), *cert. denied* 487 U.S. 1207 (1988) (citing *Wolff v.*
4  *McDonnell*, 418 U.S. 539, 556-67 (1974)).  An inmate also has "a limited right to call
5  witnesses and to present documentary evidence when permitting him to do so would
6  not unduly threaten institutional safety and goals." *Id.*

7        Turning first to Petitioner's Ground Two, he claims that his right to call
8  Jenkins as a witness was violated.  The record reflects that, in the Notice of
9  Disciplinary Hearing Before DHO, Petitioner indicated he wished to have Jenkins as
10 a witness because she could testify that Petitioner "did not offer her a bribe and he
11 did not ask her for her address and . . . never mentioned a dollar amount to her."
12 *Answer*, Ex. 1, Att. 3, p. 8.  However, as noted above, Jenkins did not testify at the
13 hearing.  In his decision, DHO Truex explained that she was not called because her
14 written statement was available and was read to Petitioner and his representative.
15 Additionally, in an affidavit prepared for this case, DHO Truex explains:

16       I did not call Ms. Jenkins as a witness for the July 21, 2011 DHO hearing.  In my view, she was the reporting officer and she was
17 also an adverse witness.  Although she was not the staff who wrote the incident report in question, she was the staff member who reported this
18 incident, which was the cause of the investigation being initiated.  It was also my view that her knowledge of the incident was adequately
19 summarized in the June 29, 2011 memorandum that I read to Mr. Mackey and his staff representative at the DHO hearing and that I
20 attached to the DHO report.

21 *Response*, Ex. 2, p. 2.

22

Respondent contends that the DHO's decision comported with *Wolff* because prison officials have the discretion to keep the hearing within reasonable limits and because the DHO did not think it was necessary to call Jenkins as a witness because her version of events was adequately covered in her memorandum. *Response*, p. 7. The Court agrees.

Prison officials are obligated to make individualized determinations to limit the calling of witnesses, and must explain their reasons for limiting the prisoner's ability to call witnesses. *See Ponte v. Real,* 471 U.S. 491, 497 (1985); *Serrano v. Francis,* 345 F.3d 1071, 1079-80 (9th Cir. 2003); *Mitchell v. Dupnik,* 75 F.3d 517, 525 (9th Cir. 1996); *Bartholomew v. Watson,* 665 F.2d 915, 917–18 (9th Cir. 1982). Legitimate justifications for refusing to allow a prison to call a witness include those cited by the Respondent here. Petitioner had no right to cross-examine witnesses in prison disciplinary hearings. *See Wolff,* 418 U.S. at 567–68. Moreover, as Respondents contend, prison officials have discretion to restrict witness testimony in order keep disciplinary hearings within a reasonable time limit or if the witness's testimony would be repetitive or superfluous. *Ponte,* 471 U.S. at 499 ("[P]rison officials must have the necessary discretion to keep the hearing within reasonable limits and refuse to call a witness that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or compile other documentary evidence.") (citation and internal quotations omitted); *Bostic v. Carlson,* 884 F.2d 1267, 1273 (9th Cir. 1989) ("[P]rison disciplinary committees may

1  sometimes deny a defendant the right to call redundant and unnecessary witnesses.")
2  (citation omitted).

3        The Supreme Court has stated that the complete denial of the opportunity to
4  present a specifically identifiable witness who possesses exculpatory evidence is "an
5  obvious procedural defect" which, when established, invalidates the deprivation of
6  good time credits. *See Edward v. Balisok*, 520 U.S. 641, 646 (1997).  Here, Jenkins
7  statements are contained in two unsworn memorandums, the first dated April 19,
8  2011, and the second dated June 29, 2011.  *See Response*, Ex. 2, Atts. 2 and 3.  Given
9  the consistency between the two statements, Jenkins' testimony at the hearing would
10 have been redundant.

11       However, Petitioner alleges that during Jenkins' April 26, 2011 telephone
12 conversation with SIA Henderson, Jenkins stated that Petitioner had never offered
13 her a bribe.  *Petition*, p. 4; *Traverse*, p.2.  This allegation, if true, would support
14 Petitioner's contention that Jenkins' April 26, 2011, statements were entirely
15 inconsistent with the two memos she prepared describing what happened.  However,
16 in the supplemental briefing submitted to the Court, Petitioner's contentions are
17 thoroughly rebutted.

18       According to Henderson and Jenkins, no telephonic conference occurred
19 between them and Petitioner on April 26, 2011.  *Respondent's Supplemental Brief*,
20 Ex. A, ¶ 4; Ex. B, ¶ 3.  They further state that their discussions about Petitioner and
21 the events of April 18, 2011, were held outside the presence of inmates.  *Id*.
22 Moreover, Jenkins states that she never made any exculpatory statements about

Petitioner and was consistent in her contention that Petitioner approached her regarding the introduction of contraband into the prison. *Id*., Ex. B, ¶ 3. Finally, Henderson states that the only documentation of the investigation was the incident report generated in July 2011. *Id*., Ex. A, ¶ 6. Although Petitioner raises a number of new issues in his supplemental briefing, none of them rebut the Respondent's claims that no exculpatory documents or testimony existed. As such, there was nothing withheld to which Petitioner was entitled. *Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir. 1992) (finding prisoner was not entitled to documentary evidence at disciplinary hearing where it "was not patently exculpatory"). Thus, Petitioner is not entitled to relief.

## III. RECOMMENDATION

Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District Court, after its independent review, **deny** Petitioner's Petition for Writ of Habeas Corpus (Doc. 1).

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days

within which to file a response to the objections. No replies shall be filed without the approval of the District Court. If any objections are filed, this action should be designated case number: **CV 12-0163-TUC-CKJ**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*).

Dated this 13th day of December, 2013.

_____
Jacqueline M. Rateau
United States Magistrate Judge