IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bakari Darnell Mackey,<br><br>                Petitioner,<br><br>v.<br><br>Conrad M Graber, et al.,<br><br>                Respondents. | No. CV-12-00163-TUC-CKJ<br><br>**ORDER** |

On December 13, 2013, Magistrate Judge Jacqueline Rateau issued a Report and Recommendation, (Doc. 27), in which she recommended denying Petitioner's Petition Under 28 U.S.C. §2241 for a Writ of Habeas Corpus by a Person in Federal Custody. Magistrate Judge Rateau advised the parties that written objections to the Report and Recommendation were to be filed within fourteen days of service of a copy of the Report and Recommendation pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure. On December 26, 2013, Petitioner filed Objections to the Magistrate Judge's Report and Recommendation. (Doc. 28). Respondents have not filed a response.

*I.     Background*

Petitioner was incarcerated at the Federal Correctional Center ("FCC") in Yazoo City, Mississippi in April 2011. On April 19, 2011, Engret Jenkins, a teacher at FCC Yazoo wrote a memorandum to Special Investigative Agent ("SIA") Henderson. (Doc. 12-2 at p. 7). The memorandum provided:

        On Monday, April 18, 2011, Inmate Bakari Mackey, 21282-

> 001, entered my office to inform me that an inmate that he had been in conversation with advised him to ask me for my address so that he could send $3,000.00 to me in an attempt to eventually ask me to bring in cigarettes. Inmate Baracki told me that the inmate who continues to contact him is Inmate Jerome Harris, 08954-003, who works in the Barber Shop at the Low. (Doc. 12-2 at p. 7).

After conducting an investigation into Ms. Jenkins' memorandum, on July 7, 2011, Acting SIA Debra Dawson prepared an Incident Report charging Petitioner with offering a staff member a bribe in violation of Prohibited Act Code 216A. (Doc. 12-1 at p. 14). Lieutenant McCraney delivered the incident report to Petitioner that same day. (Doc. 12-1 at p. 11). On July 8, 2011, Petitioner was advised of his rights before the Disciplinary Hearing Officer ("DHO"). (Doc. 12-1 at pp. 11, 17). Petitioner was advised that he had the right to a full time staff member to represent him at the hearing and the right to call witnesses and present documentary evidence on his behalf. (Doc. 12-1 at pp. 17, 18). Petitioner chose Dr. Cheek, a psychologist to represent him at the hearing and expressed his desire to call Ms. Jenkins as a witness. *Id.* Petitioner also submitted a seven page hand written affidavit explaining Petitioner's version of the events. (Doc. 12-1 at pp. 20-26).

On July 21, 2011, Acting DHO Truex held a hearing on the charges. (Doc. 12-1 at pp. 11-13). At the hearing, Petitioner denied offering a staff member a bribe and denied making the statements reported and suggested that any action he took was at the direction of staff. (Doc. 12-1 at p. 12). DHO Truex considered Petitioner's statement, Petitioner's affidavit, the Incident Report and Investigation, and Ms. Jenkins two written statements.[1] (Doc. 12-1 at pp. 12, 27). However, Ms. Jenkins was not called as a witness but her written statements were received and read at the hearing. (Doc. 12-1 at p. 11).

On July 29, 2011, Acting DHO Truex issued his decision finding that Petitioner

---

[1] In addition to Ms. Jenkins initial memorandum on April 19, 2011, Ms. Jenkins prepared a second memorandum on June 29, 2011 in which she repeated her April 19, 2011 statement but added that "Inmate Jerome Harris never approached me reference bringing in cigarettes or soliciting my address. Inmate Harris had been in the Education building; but never said anything other than a casual greeting." (Doc. 12-1 at p. 27).

had committed the charged offense. (Doc. 12-1 at p. 12). Petitioner's sanctions included 27 days of disallowed good conduct time, 30 days of disciplinary segregation, 180 days of commissary restriction, 180 days of telephone restriction, and a recommendation that Petitioner be transferred. (Doc. 12-1 at p. 12).

On August 14, 2011, Petitioner filed a Regional Remedy Appeal with the Southeast Regional Office. (Doc. 12-1 at p. 2). On September 22, 2011, Petitioner's appeal was denied. *Id*. On October 12, 2011, Petitioner filed an administrative remedy with the Central Office, which was denied on March 19, 2012. *Id*. On March 5, 2012, Petitioner filed a Petition for Writ of Habeas Corpus. (Doc. 1).

II.   *Standard of Review*

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Pursuant to 28 U.S.C. § 636(b)(1), if a party makes a timely objection to a magistrate judge's recommendation, then this Court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." *See also Schmidt v. Johnstone*, 263 F.Supp.2d 1219, 1226 (D. Ariz. 2003) (reading the Ninth Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required to review "any issue that is not the subject of an objection"); *United States v. Reyna-Tapia*, 328 F.3d 1114 (9th Cir.2003) (disregarding the standard of review employed by the district court when reviewing a report and recommendation to which no objections were made).

III.  *Analysis- Objections to Report and Recommendation*

Magistrate Judge Rateau's Report and Recommendation found that the Court has jurisdiction over this matter and that the Petitioner exhausted his administrative remedies prior to filing his Habeas Petition. The Court agrees. Further, Respondent has not objected to Magistrate Judge McDonald's finding that Petitioner exhausted his

1 administrative remedies prior to filing his Petition. As such, the Court adopts Magistrate
2 Judge Rateau's findings regarding jurisdiction and Petitioner's exhaustion of
3 administrative remedies.

4 Petitioner objects to Magistrate Judge Rateau's Report and Recommendation. He
5 asserts that his due process rights were violated when he was denied the right to call Ms.
6 Jenkins at the DHO proceeding. According to Petitioner, he initially spoke with Ms.
7 Jenkins on April 4, 2011. During this conversation, Plaintiff alleges that he told Ms.
8 Jenkins that another inmate claimed that Ms. Jenkins had brought cigarettes into the
9 prison and he wanted to see if that was true. Petitioner further alleges Ms. Jenkins
10 admitted to speaking with another inmate about the same issue. Petitioner argues that
11 Ms. Jenkins' statement did not deny that the April 4, 2011 conversation took place or that
12 she spoke with another inmate about the same issue. As such, Petitioner contends that it
13 was a violation of his due process not to call Ms. Jenkins as a witness at the DHO
14 proceeding.

15 Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. § 3624.
16 As such, they have a due process interest in the disciplinary process that may take away
17 those credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-67, 94 S.Ct. 2963, 2975, 41 L.Ed.2d
18 935 (1974). "Due process in a prison disciplinary hearing is satisfied if the inmate
19 receives written notice of the charges, and a statement of the evidence relied on by the
20 prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d
21 183, 186 (9th Cir. 1987), *cert. denied* 487 U.S. 1207 (1988) (*citing Wolff*, 418 U.S. at
22 563-66, 94 S.Ct. at 2978-79). Additionally, "[t]he inmate has a limited right to call
23 witnesses and to present documentary evidence when permitting him to do so would not
24 unduly threaten institutional safety and goals." *Id*. (citations omitted). "Prison
25 disciplinary proceedings[, however,] are not part of a criminal prosecution, and the full
26 panoply of rights due a defendant in such proceedings do not apply." *Wolff*, 418 U.S. at
27 556, 94 S.Ct. at 2975.

28 While prisoners have a right to call witnesses at a disciplinary proceeding, there is

1   no right to cross examine a witness.  *Wolff*, 418 U.S. at 567-568.  Further, the right to call
2   witnesses at a DHO proceeding is a limited one.  *Ponte v. Real*, 471 U.S. 491, 499
3   (1985).     Prison officials may restrict the calling of witnesses when it would be
4   unduly hazardous to institutional safety or correctional goals.  *Ponte*, 471 U.S. at 499
5   *citing Wolff*, 418 U.S. at 563.  Prison officials have the discretion to keep the hearing
6   within reasonable limits and refuse to call witnesses that may create a risk of reprisal or
7   undermine authority."   *Ponte*, 471 U.S. at 499.   Moreover, "prison disciplinary
8   committees may sometimes deny a defendant the right to call redundant and unnecessary
9   witnesses."  *Bostic v. Carlson*, 884 F.2d 1267, 1274 (9ith Cir. 1989).  The burden of
10  establishing an adequate justification for denying Petitioner the right to call a witness is
11  on the prison officials.  *See Ponte*, 471 U.S. at 1274.
12         In this case, Ms. Jenkins provided two written statements describing her encounter
13  with Petitioner.  The two statements are virtually identical and implicate Petitioner as the
14  only individual that approached Ms. Jenkins on April 18, 2011 to inquire about her home
15  address so that she could be sent $3,000.00 as payment for bringing cigarettes into the
16  prison.  The second statement adds that the inmate Jerome Harris, whom Petitioner had
17  suggested was the inmate who told Petitioner to approach Ms. Jenkins, never approached
18  her in reference to bringing cigarettes into the prison.
19         These two statements were considered by the DHO officer during the disciplinary
20  proceeding.    Given the consistency of these two statements, the hearing officer
21  determined that Ms. Jenkins testimony at the hearing would be redundant.  This Court
22  agrees.   There is no indication that Ms. Jenkins would have provided exculpatory
23  statements about Petitioner based on her two statements and the exclusion of Ms. Jenkins
24  as a witness was not a deprivation of Petitioner's right to call witnesses in light of the fact
25  that her statements from April 19, 2011 and June 29, 2011 were considered by the DHO.
26         Next, Petitioner objects to Magistrate Judge Rateau's finding that Petitioner's
27  contentions regarding an alleged April 26, 2011 telephone conversation between SIA
28  Henderson and Ms. Jenkins in Petitioner's presence was thoroughly rebutted.  According

- 5 -

to Petitioner, on April 26, 2011, Ms. Jenkins spoke with SIA Henderson on the phone. During this conversation, Ms. Jenkins allegedly stated that Petitioner had never offered her a bribe.

However, while Ms. Jenkins and SIA Henderson acknowledge that they spoke regarding the events of April 18, 2011, both denied ever having a telephonic conversation on April 26, 2011, both denied ever having any conversations in the presence of Petitioner and both denied ever suggesting that Petitioner was not offering Ms. Jenkins a bribe. (Doc. 20-1; Doc. 20-2). In fact, Ms. Jenkins specifically explained in her affidavit that she never told anyone that Petitioner was not trying to convince her to bring contraband into the prison. (Doc. 20-2). As such, the Court finds that Petitioner's allegations regarding an April 26, 2011 telephonic conversation between Ms. Jenkins and SIA Henderson in which Ms. Jenkins acknowledged that Petitioner never offered her a bribe were thoroughly rebutted.

Finally, Petitioner argues that the DHO's view that Ms. Jenkins' knowledge of the incident was adequately summarized in her June 29, 2011 memorandum is not supported by any facts. Specifically, Petitioner argues that he presented contradictory evidence in his affidavit.[2] The fact that Petitioner provided a different version of events than Ms. Jenkins does not establish that Ms. Jenkins' version of the events from April 18, 2011 was not adequately addressed in her statement. The statements were prepared by Ms. Jenkins. She drafted the first statement on April 19, 2011, one day after the events occurred. She then prepared a second statement in which she repeated her earlier statement and clarified that the other inmate implicated by Petitioner never approached her. While her statements only addressed the events from April 18, 2011, those are the only events for which Petitioner was charged with an infraction. Further, the DHO considered Petitioner's argument that he was only informing Ms. Jenkins about the

---

[2] In his Affidavit, Petitioner alleges that he initially had a conversation with Ms. Jenkins on April 4, 2011 about information he was told by another inmate regarding Ms. Jenkins bringing cigarettes into the prison. Petitioner contends that he only reported this information in an effort to bring the other inmates actions to light and his intent was only to report this information to Ms. Jenkins to protect her.

- 6 -

actions of other inmates in an effort to report the actions of the other inmates, and that defense was rejected.

As such, the Court finds that Petitioner's due process rights were not violated by the DHO's decision to deny Petitioner's request to call Ms. Jenkins as a witness at his hearing. Further, the Court finds that there is sufficient evidence in the record to support the conclusion reached by the disciplinary board.

Petitioner objects to Magistrate Judge Rateau's characterization of ground one of Petitioner's claim that his due process rights were violated because his inmate representative did not obtain all the documents he had requested. Petitioner alleges that his actual claim was that his due process rights were violated because he was denied the right to present documentary evidence. However, the substance of Petitioner's claim in count one of his Complaint alleges that his staff representative "failed and/or otherwise refused to obtain and present the requested documentary evidence on Petitioner's behalf at the discipline hearing." (Doc. 1 at p. 6). As such, Magistrate Judge Rateau's characterization of Petitioner's claim was correct. Moreover, the issue of whether any documentation was withheld from Petitioner or Petitioner was denied the ability to present additional documentation during his hearing was addressed by Magistrate Judge Rateau and the Court adopts those findings.

Finally, Petitioner objects to Magistrate Judge Rateau's finding that the issues involved in this case were not complex. Petitioner suggests that since the incident took place on April 18, 2011 but was not resolved until July 6, 2011 the issues involved must be complex. Petitioner committed the infraction on April 18, 2011. Ms. Jenkins prepared a written statement of Petitioner's actions one day later on April 19, 2011. From April 19, 2011 to July 7, 2011 prison officials conducted an investigation into Ms. Jenkins' allegations. The fact that it took prison officials 79 days to complete their investigation into Ms. Jenkins' allegations does not establish the complexity of the issues. The Court agrees with Magistrate Judge Rateau that the issues in this matter are not complex.

*Certificate of Appealability*

"The plain language of [28 U.S.C.] §2253(c)(1) does not require a petitioner to obtain a [certificate of appealability] in order to appeal the denial of a §2241 petition." *Harrison v. Ollison*, 519 F.3d 952, 958 (9th Cir. 2008). "Nor is there any other statutory basis for imposing a [certificate of appealability] requirement on legitimate §2241 petitions. Although state prisoners proceeding under §2241 must obtain a [certificate of appealability], *see* §2253(c)(1)(A), there is no parallel requirement for federal prisoners." *Id*. Accordingly, because Petitioner is a federal prisoner bringing a legitimate §2241 petition, a certificate of appealability is not required.

Accordingly, IT IS ORDERED:

1. The Report and Recommendation, (Doc. 27), is ADOPTED.

2. Petitioner's Petition Under 28 U.S.C. §2241 for a Writ of Habeas Corpus by a Person in Federal Custody, (Doc. 1), is DENIED.

3. The Clerk of the Court shall enter judgment in this matter and close its file.

Dated this 7th day of April, 2014.

_____
Cindy K. Jorgenson
United States District Judge